WILSON versus JORDAN.[a]

1. It is no defence to an action, brought upon a promissory note, that the note had been executed in consideration of the purchase of real estate; the title to which was alleged to be defective, and incumbered by a paramount title; no fraud being alleged, and it appearing that the vendee had enjoyed possession long before the alleged incumbrance ensued; and, that there had been no judicial test of the validity of the title, and no eviction had.

2. Whether the 20th section of the act of 1803,[b] on the subject of constructive covenants, applies to absolute conveyances in *fee simple*, or to conveyances of limited estates, leaving a reversionary interest, certain or contingent, in the grantor and his heirs—*Quare*.

3. If a failure of consideration in the sale of land, (or personal estate,) be the result of fraudulent intention in the vendor, especially if it relate to the quantity or quality sold; such failure may constitute a legal defence to an action, brought to recover the purchase money.

4. Generally, however, the injury by the failure of consideration, must have been sustained before the remedy is sought; either by using it as matter of defence to an action for the purchase money, or as the ground of an independent action.

5. If a failure of consideration arise from the conveyance of a land title, which is defective, by reason of a paramount title, in another, or other incumbrance; the invalidity of the title, (or the incumbrance,) must have been ascertained by an eviction, or something tantamount thereto, before relief can be sought.

6. But in cases of *fraud*, this rule would, *it seems*, be properly extended, so as to authorise redress, under similar circumstances, *whenever* the injury could be sufficiently ascertained.

7. In such cases, neither the necessity of disturbance in the enjoyment, nor the doctrine of eviction, can apply.

This was an action of debt, in Greene Circuit court, brought by the defendant in error, upon a

[a]This case was decided at January term, 1832; but the opinion having been taken from the files, and misplaced, it but lately came to the Reporter's possession.
[b]See Aikin's Digest, page 94, §33.

WILSON *vs.* JORDAN.

promissory note. The facts of the case disclosed, that the note sued on, had been executed in consideration of the purchase of real estate.

Under the pleas of the general issue ; want of, and failure of consideration, it was endeavored to be shown by the defendant, that there was an outstanding paramount title existing against the estate, in consideration of which the note had been made.

The note was given in payment for a house and lot, which had been conveyed by Jordan to Wilson ; Wilson conveyed to one Cooper, who, at the time of the decision below, was shown to have been in possession. Wilson proposed proving, in the court below, that no deed conveying the property to Jordan, (his vendor) could be found in the proper office, in Greene county ; and that the house and lot, had been, before that time, sold by the Sheriff, as of the estate of Martin, the vendor of Jordan. No judicial test of the validity of Jordan's, or other title, had been had, and no eviction ; nor was fraud relied on in the transaction. The court below rejected the evidence of these facts ; which was excepted to and relied on in this court, as error.

SAFFOLD, J.—Jordan instituted an action of debt, in Greene Circuit court, against Wilson, as maker of a promissory note, payable to Jordan, for three hundred dollars. The pleas were, the general issue ; want of consideration, and failure of consideration. The plaintiff below obtained a verdict and judgment. From a bill of exceptions, taken on the trial, by the defendant below, it appears that one John F. Martin sold a house and lot to Jordan, and executed to him a deed. That Jordan, in Octocer, 1826, being in

possession, sold the house and lot to the defendant, Wilson; executed to him a deed, and gave him possession of the premises, for which the aforesaid note was given. That about a year after this sale, Wilson sold the same to one Cooper, and gave him possession, which he retains. It further appears that said defendant, Wilson, offered to prove that no deed conveying the lot to Jordan, had been recorded in Greene county; also, to prove by the sheriff, and the production of the execution, that the house and lot had been sold to Daniel Greene, by the sheriff, to satisfy an execution against Martin, the first granter as aforesaid, in September, 1829. The note, it will be observed, was executed in October, 1826 : the suit commenced in August, 1829, and the trial was had at March term, 1830.

The court, on motion of the plaintiff, below, rejected the evidence offered, to prove the failure of consideration, as aforesaid.

The rejection of this evidence is the cause assigned for error.

The appellant, Wilson, contends that it was competent for him to introduce evidence, going to establish a failure of title of the vendor, as a defence to the action on the note: and that though there had been no *eviction in fact*, the circumstances operate as an eviction in law, and constitute a legal defence.

The adverse party controverts these positions; and contends, that the sheriff's title may be invalid, or never prosecuted; or, should it ever be prosecuted to eviction, it does not appear what were the covenants in the deed, or whether there were any; also, that an eviction, by a title, to which the covenants do not extend, imposes no responsibility on the vendor,

either in law or equity.   He further contends, that where a purchaser has taken a defective title, and can not recover against his immediate vendor, his only recourse is to the covenants of the earlier vendors, many of which may run with the land; also, that Wilson and his vendee, having had possession near three years before the sale, and received the *mesne* profits, the failure of consideration, if any, is but *partial*, which is not available *at law.*

It is to be observed, no question has been raised respecting the sufficiency of the proof, that the several conveyances were duly executed as stated.   It is not shewn what covenants, or whether any, were expressed in them.   Nor is the precise date of the judgment shewn, but, from the record and argument, we assume the fact that it was not until recently before the sale, and about the time the suit was commenced on the note.

The effect of the statute, creating constructive covenants, relied on by the appellant, is not unworthy of consideration.   It provides, that in all deeds, "whereby any estate of inheritance, in *fee simple,* shall hereafter be limited to the grantor, or his heirs, the words grant, bargain, sell, shall be adjudged an express covenant to the grantee, his heirs and assigns, to wit: that the grantor was seized of an indefeasible estate, in *fee simple;* freed from incumbrances, done or suffered from the grantor, (except the rents and services that may be reserved,) as also, for quiet enjoyment against the grantor, his heirs and assigns; unless limited in express words contained in such deed; and the grantee, his heirs, &c. and assigns, may, in any action, assign breaches, as if such covenants were expressly inserted."[a]

[a] Toul. Dig. 238

There appears some difficulty in the construction of this statute; whether the section quoted was intended to be applied to absolute conveyances, *in fee simple*, or to conveyances of limited estates, leaving a reversionary interest, either certain or contingent, in the grantor and his heirs. The least intelligible part of the section, are the words, " whereby any estate of inheritance, in *fee simple* shall hereafter be limited to the *grantor or his heirs.*" If, according to the true construction of this statute, it refers to conveyances in *fee simple*, and creates, by its own operation, (as is contended,) a general warranty of title and covenant, for quiet enjoyment, by the grantee, his heirs and assignees, it excludes from this state, the source from which have arisen many of the most intricate and important questions relative to the tenure of real estate, and the responsibility of vendors.

If, on the contrary, the statute can only apply to conveyances of estates, on condition, or limited in duration ; or, if it creates warranties and covenants, only against subsequent alienations, or incumbrances by the grantors, and their heirs, then it can have no influence on cases like the present: and in this view of the subject, unless we should infer, as the contrary is not shewn, that the deed did contain full covenants, or warranties, the positions assumed by the counsel for the appellee, would be unanswerable—that, in as much as the conveyances have been executed by the necessary parties, if the purchaser has been, or should be, evicted by a title to which the covenants do not extend, he can not withhold the purchase money, either in law or equity ; unless it be on an allegation of *fraud* distinctly made, and sufficiently sustained.[a]

[a] Sug on V. 348, § 3; — Bos. & Pul. 170; 5 John. Ch. R. 84.

But as the effect of this statute was not fully discussed in the argument—as we are not satisfied respecting the construction, and as other questions involved are fully decisive of this case, we decline, on this occasion, declaring any construction of the section alluded to.

If the alleged defect of title had not been sufficiently ascertained, and could not be legally tested, in this action, the consequence must be, that the defence insisted on, ought not to have been sustained.

The case of *Frisby* vs. *Hoffnagle*,[a] is much relied on, in support of the defence offered against this note.    That action was brought to recover the amount of notes, given to secure the purchase money of a tract of land, conveyed by a deed with warranty.    There, before the conveyance was executed, a judgment, had been obtained against the plaintiff, and after the notes were given by the defendant, the land was taken, by virtue of an execution on that judgment and sold, and conveyed by the sheriff.— The plaintiff proved that the defendant had not been evicted or disturbed in his possession of the land, by the purchase at the sheriff's sale.    The Judge being of opinion, that the consideration had failed, directed the plaintiff to be non-suited, with leave to move to set aside the non-suit.    The supreme court held, that the consideration had entirely failed : for, although the defendant had not then been evicted, he was liable to be so, and would be responsible for the *mesne* profits; and, that it was competent for the court to do justice, at once, and avoid circuity of actions.    It is true, however, as contended, by the appellee, that this case sustained the doctrine of relief,

[a] 11 John R. 50.

by way of defence, to a greater extent than it had been usually carried in that State; and its authority has been subsequently questioned—nor do the authorities,[a] cited by the court, in support of this decision, well sustain it. But that case, according to the view taken of it, by that court, was materially different from this, in as much as the failure of consideration there, was entire, and, in this, it was not. The decisions of this court, however, have gone far, to abolish the distinction, with us, between the effect of a partial and total failure of consideration.— See M'Million vs. Pigg & Marr,[b]—Peden vs. Moore.[c] These cases, like those cited, in support of the case of Frisby vs. Hoffnagle, related to the sale of personal property; but, we are of opinion, the principles of relief should, in this respect, be the same in reference to the sale of either kind of property—provided the circumstances, constituting the failure of consideration, be equally conclusive, and susceptible of proof at law. Nor do we feel the least dissatisfaction with our former decisions, so far as they tend to place partial, and total failure of consideration, on the same footing, instead of driving parties to the circuity of actions.

There is, yet a more essential difference between the case of Frisby vs. Hoffnagle, and this; than the one mentioned. In the former, the judgment, creating the lien on the land, existed previous to the execution of the conveyance; consequently the title was incumbered, so as to be rendered invalid, from its inception; and that, in a manner which must be presumed to have been known to the vendor, when he executed the conveyance. These circumstances implied fraud, which might authorise a rescission of

the contract; and though the presumption of fraud, was not expressed, as the ground of the decision, it must be so considered, to reconcile the case with the current of decisions, in the same court. It is a settled rule of law, that if a failure of consideration, in the sale of land, as well as personal estate, be the result of a fraudulent intention, in the vendor, especially, if it relate to the quantity or quality of the thing sold, such failure may constitute a legal defence to an action, brought to recover the purchase money. Generally, however, the injury must have been sustained, before the remedy can be sought— either by using it as matter of defence, to an action, for the purchase money, or as the ground of an independent action. If a failure of consideration arise from the conveyance of a land title, which is defective, by reason of a paramount title in another, or other incumbrance, the invalidity of the title must be ascertained by an eviction, or something tantamount thereto, before the relief can be sought. Yet, we think the right of redress may, on principle and authority, be extended so much farther, in either of the forms mentioned, as to afford a remedy, in case of fraud, respecting the quantity or quality of lands conveyed ; and that it may be sought as soon as the facts are sufficiently ascertained. In such case, neither the necessity of disturbance in the enjoyment, nor the doctrine of eviction, can apply.

The case, cited, of *Adams* vs. *Wiley et ux* [a] carries [a] Nott&M' the principle farther, and affords such relief, without Cord, 78. evidence of fraud. There, the action was brought, on bonds, given to secure the purchase money, for lands sold by the plaintiff to the defendant. The defence was, that the quantity of land had been mis-

represented, by the plaintiff; also, the quality.—
*Colcock*, J., in delivering the opinion of the court,
remarked, that it was apparent, there was no fraud
in the case; that there may have been misrepresen-
tation, which, though not intentional, might entitle
the defendant to a discount. He further said, a de-
ficiency, in quantity, or defect in quality, where there
has been a representation, is a legitimate ground for
a deduction of price, or rescission of the contract, as
the case may be; but, that case, on the part of the
defendants, was to be considered as an action of
breach of covenant: for, it had been proved, and ad-
mitted, that the true quantity of land, was less than
that stated in the deed.

In the case of *Mackey* vs. *Executors of Collins,*[a]
it was decided, that where the defendant had, by
deed, granted, bargained, sold, and released, to the
plaintiff, a tract of land, to hold, *in fee;* and, there-
by bound himself, his heirs, executors, &c., to war-
rant, and forever defend the premises, to the plain-
tiff, his heirs, &c. against all persons, whomsoever,
lawfully, claiming, or to claim the same, or any part
thereof; the plaintiff might maintain an action, for
the breach of such covenants, before eviction, by
shewing a paramount title, in a third person.

But in both these South Carolina cases, the court
rested the decisions mainly on rules of practice,
which they said, had long prevailed in *that State,*
and which they admitted, to have been a slight de-
parture from the strict common law doctrine.

A similar practice is found to prevail in Pennsyl-
vania.[b] But, in reference to these cases, it is suffi-
cient to remark, that as that State recognises no se-
parate Chancery jurisdiction, the decisions, there,

[a] 2 Nott & M'Cord, 186.

[b] 1 Serg. & Rawl. 433. 5 Id. 294— 3 Starkie, 1614.

cannot be regarded as satisfactory authority, on questions, involving the distinction between common law, and Chancery jurisdiction, or the precise boundary of the former.

In most of the other States of the Union, as well as in England, the principles of decision are understood to be different. The rule adopted in Kentucky, is, that the defence of a failure of consideration of a note, given for a tract of land, cannot be sustained, unless the consideration has *utterly* failed.— Nor is it there allowed, if the contract has been consummated, on the part of the vendor, by executing the deed of conveyance, with either a general warranty of title or a special warranty, against himself. The reason expressed, by the *court of Appeals,* was, that in cases of a general warranty, a liability was thereby imposed on the vendor, which would not be destroyed by the plea, and which was, itself, a valid consideration; and, in case of such special warranty, if the land was lost by a title derived from the vendor, he would be subject to an action on the warranty, for the loss. And, it was further remarked, in the same case, that a deed of conveyance without warranty, would operate, as an assignment of the preceding warranties, which run with the land.[a]

[a] 5 Litt. 247
3 Id. 118.

Other and later decisions, in New York, than the one referred to, (*Frisby* vs. *Hoffnagle,*) maintain principles less favorable to the defence here insisted on, than is the doctrine of that case. The case of *Bumpus* vs. *Platner,*[b] was a controversy respecting a failure of the consideration of a bond and mortgage, given to secure the payment of part of the purchase money, for a tract of land which had been conveyed by deed, with covenants of warranty.

[b] 1 John. Ch. R. 213.

WILSON *vs.* JORDAN.

The Chancellor, in assigning his reasons, for refusing relief, observes, " It is said to be very difficult, to extract from the books, what the rule of equity is, upon this point of failure of consideration, after the agreement is executed ;ᵃ but, I apprehend, it may be safely said, that there is no case of relief, on this ground, where possession has passed and continued, without any eviction at law, under a paramount title." It is true, that under a conveyance, which the complainants in that case, charged to be defective, on account of a prior conflicting conveyance, from the same original grantor, they had held quiet possession, for near twenty years; and, the Chancellor remarked, that the legal presumption was fast ripening against the opposing title, from the lapse of time, since it accrued : that it might be the better title, but it could not be tried upon that bill— it was impossible for him to know, what legal, or what valid defence might be set up against it.—Perhaps, there might be none ; but the application was clearly premature ; and, it would be without precedent, and dangerous, in principle, to arrest and bar the recovery of a debt, while the purchaser is still in possession, under the purchase deed, and there had been no eviction at law."

The case of *Miller* vs. *Watson*,ᵇ is an authority, in direct opposition to the defence here insisted on. There was an admitted failure of title, conveyed by deed, with warranty, and a verbal promise, by the vendor, to account for the purchase money. The court held, that, as there had been no eviction, there was no consideration to support the promise : and, that where a debt is secured by an instrument of a higher nature, as by deed or record, the promise to

pay it, is void.—That, admitting there was a cloud upon the title, or that it had entirely failed, the hostile claim may have been quieted, or purchased in, by the vendee, for a very small portion of the consideration money; or the vendor may himself have quieted the title.

. Without determing how far we would be disposed to adopt the principles of this latter decision, we have no hesitation in deciding, that, in this case, for the reasons that no fraud is alleged—the contract had been executed, long before the incumbrance accrued —Wilson and his vendee enjoyed the possession for near three years, and continued to do so—and that there had been no judicial test of the validity of the title conveyed, for the want of which, the effect of the incumbrance was uncertain—the defence at law was unsustainable.

The judgment must, therefore, be affirmed.